**William F. CALKINS, Owner (pro hac vice) of the fishing vessel, LUCKY ONE, in an action for limitation of liability, Plaintiff-Appellant,**

**v.**

**Sherry-Lee GRAHAM, Defendant-Appellee.**

**No. 80–3155.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 16, 1981.

Decided Feb. 16, 1982.

Rehearing Denied March 9, 1982.

William F. White, Portland, Or., for plaintiff-appellant.

J. F. Ouderkirk, Richardson, Ouderkirk & Hollen, Newport, Or., argued, for defendant-appellee; William A. Barton, Newport, Or., on brief.

Before MERRILL and NELSON, Circuit Judges, and SWEIGERT,* District Judge.

SWEIGERT, District Judge.

Appellant, William F. Calkins (Calkins), appeals from the dismissal of his action to limit his liability for a state judgment to the value of the vessel upon which the cause of action giving rise to the state judgment arose. The district court concluded that Calkins was not the "owner" or "charterer" of the vessel and, therefore, could not use the limitation of liability provisions of 46 U.S.C. §§ 183 and 186.

The vessel in issue, the Lucky One, is a commercial fishing vessel. Pearl A. Calkins (Pearl), Calkins' mother, held legal title to the Lucky One at all times relevant to this action.

Prior to April of 1977, Pearl agreed to sell the vessel to Calkins or to such third party as he might select. She delivered full possession and control of the vessel to Calkins at that time.

At some time thereafter, Alaska-Oregon Fisheries, Inc. (AOF), agreed to purchase the vessel. Calkins was president of AOF and held 75% of AOF stock. Title was not transferred to AOF at that time.

AOF, through Calkins, immediately entered into a separate oral agreement to sell the vessel to Eileen Ballo (Ballo). Ballo was to pay the purchase price to AOF in installments; the first payment to be made at the close of the fishing season.

Calkins, on behalf of AOF, delivered possession and control of the vessel to Ballo. Ballo, upon receiving the Lucky One, sailed it to a boat repair and storage facility named River Bend Moorage. Ballo was to have the vessel surveyed so she could obtain insurance for it.

Ballo then contacted Appellee, Sherry-Lee Graham (Graham), and asked Graham to help prepare the vessel for the coming fishing season. On April 26, 1977, Graham was injured while working on the Lucky One.

Sometime after the accident, AOF obtained legal title to the vessel pursuant to its agreement with Pearl. On or about October 1, 1977, Calkins, acting on behalf of AOF, retook possession of the Lucky One because Ballo had failed to make her installment payments under the purchase agreement.

In March of 1978, Graham brought an action in state court to recover for her injuries. Her initial complaint named only AOF as a defendant. However, the complaint was served on Calkins in his capacity as president of AOF. An amended complaint naming Calkins in his individual capacity, as well as Ballo, was filed on April 4, 1979.

After jury trial, in which a verdict was returned on September 5, 1979, Ballo was found to have been negligent and to have been an agent of Calkins at the time of the accident. The parties stipulated in that trial that at no time relevant to the case was Calkins present at the River Bend Moorage where the injuries to Graham were sustained.

On September 7, Calkins filed an action in federal district court to limit his liability to the value of the Lucky One pursuant to 46 U.S.C. §§ 183 and 186.

Calkins' limitation of liability suit came on for trial in federal district court on April

---

* Honorable William T. Sweigert, Senior United States District Judge, Northern District of California, sitting by designation.

24, 1980. On April 25, 1980, the district court ruled that Calkins was not the "owner" or "charterer" of the Lucky One at the time of the accident and was, therefore, not entitled to limit his liability.

Three main issues are raised on this appeal: (1) whether Calkins qualified as an "owner" or "charterer" of the Lucky One within the meaning of 46 U.S.C. §§ 183 or 186; (2) whether Calkins was in privity with Ballo, thereby excluding him from a limitation of liability under 46 U.S.C. §§ 183 and 186 and (3) whether Calkins' action to limit his liability was timely filed within six months from receipt of written notice of the claim as required by 46 U.S.C. § 185.

The court's resolution of the first of these issues obviates the need for a determination of the remaining issues.

Calkins contends in this proceeding that he was the "owner" of the Lucky One within the meaning of 46 U.S.C. § 183. Section 183 provides in pertinent part:

> (a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

Calkins bases his contention of ownership under § 183(a) on three grounds: (1) that under the circumstances, he was a "likely target" for a lawsuit stemming from any injuries occurring on the vessel during April of 1977; (2) AOF, a company which Calkins controlled was the legal owner of the vessel and Calkins, as such, is entitled to share in the company's limited liability under § 183; and (3) that Calkins is entitled to protection under § 183 because he was the managing agent of the vessel at the time of the accident.

Section 183 grants the owner of a vessel limited liability, and the term "owner" has been given a fairly broad definition by the courts. The Supreme Court has declared that the limitation of liability provision should be given a broad construction so as to achieve Congress' purpose of inducing and encouraging investment in shipping. *Flink v. Paladini*, 279 U.S. 59, 49 S.Ct. 255, 73 L.Ed. 613 (1929). Thus, the statute has been construed liberally to cover insurers (*Craig v. Continental Ins. Co.*, 141 U.S. 638, 12 S.Ct. 97, 35 L.Ed. 886 (1891)) and the use operator and title owner of a vessel (*Complaint of B.F.T. No. Two Corp.*, 433 F.Supp. 854 (D.C.Pa.1977)).

Calkins first contends that he was the "owner" of the vessel within the meaning of § 183 because he was "unquestionably the person who operated and managed the vessel," thereby making him a "likely target" for any legal claims concerning the vessel. (Appellant's Opening Brief at 10.) Calkins cites *Admiral Towing Co. v. Woolen*, 290 F.2d 641, 645 (9th Cir. 1961), for the proposition that the term "owner" should encompass anyone whose *"relationship to the vessel* is such as might reasonably afford grounds upon which a claim of liability for damages might be asserted against him, a claim predicated on his status as the person perhaps ultimately responsible for the vessel's maintenance and operation and a claim against which the Limitation Act is designed to furnish protection." (Emphasis added).

■ Although this contention may have had some merit while Calkins was in exclusive possession and control of the vessel for his mother, it does not apply to the situation as it existed at the time of the accident. When the accident occurred, Calkins no longer had possession or control of the vessel, nor was he responsible for its maintenance and operation; Ballo was in possession and control and responsible for the vessel's maintenance and operation under

her sales agreement with AOF.[1] The circumstances which make one a "likely target," as in *Admiral Towing, supra*, 290 F.2d 641, must exist at the time of the accident or loss. *See American Car & Foundry Co. v. Brassert*, 61 F.2d 162, 164 (7th Cir.), *aff'd* 289 U.S. 261, 53 S.Ct. 618, 77 L.Ed. 1162 (1933), (the issue is "whether [the party seeking to limit liability] was the owner of the boat at the time of the accident.").

■ There is some surface appeal to Calkins' argument that, since he was found liable in state court for an injury occurring aboard the Lucky One, he should be entitled to limit his liability under § 183. However, § 183 was designed to encourage investment in shipping by exempting an investor from a loss greater than the fund he is willing to invest in the enterprise. *Flink v. Paladini, supra*, 279 U.S. at 62, 49 S.Ct. at 255. At no time did Calkins have any money at all invested in the Lucky One.

Moreover, according to *Admiral Towing, supra*, 290 F.2d at 645, the term "owner" in § 183 should encompass anyone whose relationship *to the vessel* might make him liable for injuries occurring thereon. Calkins had no relationship to the Lucky One at the time of the accident; he was merely the agent of his mother, Pearl, and of AOF, in selling the Lucky One to Ballo. Calkins has admitted that he had "agreed to sell and did sell the vessel to [Ballo] and did deliver full possession and control of the vessel to her . . . ." Clerk's Record, Vol. I, Document # 14, Exh. C, ¶ 1 (Calkins' Answer to the Complaint in the state court action).

Calkins was found liable by the state court jury, not because of his relationship to the Lucky One, but because of his relationship to Ballo. The verdict form returned by the jury stated a finding that Ballo had

acted as Calkins' agent and judgment was entered against Calkins based on that finding alone.[2] Any issue relating to the limitation of Calkins' liability was expressly kept out of the state trial. Clerk's Record, Vol. I, Document # 1, ¶ VII (Calkins' Complaint in his federal action for limitation of liability).

The case of *American Car & Foundry Co. v. Brassert*, 289 U.S. 261, 53 S.Ct. 618, 77 L.Ed. 1162 (1933) (*Brassert*), supports this distinction. In *Brassert*, the Supreme Court held that § 183 was inapplicable to a manufacturer of a vessel having only a limited interest in the vessel who sought protection against liability stemming from negligence in the manufacture of the vessel, but unrelated to any ownership interest in the vessel itself.

*Admiral Towing Co. v. Woolen, supra*, 290 F.2d 641, relied on by Calkins to support his contention that he should be able to limit his liability because he was found liable in state court as Ballo's principal, is not apposite. In *Admiral Towing*, the person seeking to limit liability, Martinson, personally held a promissory note secured by a mortgage on the vessel. The cause of action arose after the buyer had defaulted on the note and while a master employed by Martinson to return the vessel to Martinson's possession was in full control of the boat. In our case, Ballo was not in default on her sales agreement with AOF at the time of the accident and Calkins had no personal ownership or security interest in the Lucky One.

■ Calkins next contends that, as a controlling shareholder in AOF, he is entitled to benefit from whatever protection AOF might enjoy under § 183. He cites *Flink v.*

---

1. It is ironic that Calkins was found liable in state court and Ballo was found to be Calkins' agent on the vessel. The evidence in the record before us suggests the contrary. *See, e.g.*, Reporters' Transcript, Vol. II, at 35. In any event, this court is not bound in any way by the state court verdict on the issue of liability in determining the federal question of whether Calkins was the "owner" of the Lucky One under federal law. *Ex parte Green*, 286 U.S. 437, 439–440, 52 S.Ct. 602, 603, 76 L.Ed. 1212 (1932) ("It is

clear from our opinion that the state court has no jurisdiction to determine the question of the owner's right to a limited liability, . . . .")

2. Other evidence in the record before this court suggests that Calkins and Ballo had a close personal relationship that may have figured into the jury's finding of agency at the state trial. *See* Reporter's Transcript, Vol. II, at 15, 11:2–10 and at 30, 11:14–18.

*Paladini, supra,* 279 U.S. 59, 49 S.Ct. 255, 73 L.Ed. 613, for the proposition that stockholders can limit their liability to the value of a vessel owned by a corporation.

In *Flink,* however, the Supreme Court allowed the shareholders to benefit from the limitation of liability afforded the corporation because under California law at that time shareholders were personally liable for the obligations of the corporation. *See Calif.Const.,* former Art. XII, § 3 and Calif. Civil Code, former § 322. Both of these California provisions were repealed after *Flink* was decided and now California shareholders are not liable generally for the obligations of the corporation. *See generally,* 6 Witkin, Summary of California Law, Corporations, §§ 1–2, pp. 4313–4316.

■ Calkins next contends that he was the managing agent of the Lucky One on behalf of the legal owner, even though he was not in possession or control of the Lucky One at the time of the accident, citing *Petition of the United States,* 259 F.2d 608 (3d Cir. 1958). However, in *Petition,* the party seeking the protection of § 183 had agreed to "equip, fuel, supply, maintain, man, victual and navigate" the vessels involved in the case. *Id.,* at 609. There was no such agreement in our pending case.

■ Finally, Calkins contends that the state court finding that Ballo was Calkins' agent, making Calkins vicariously liable for Ballo's negligence, qualifies Calkins as a "demise (bareboat) charterer" of the Lucky One, entitling him to limited liability under 46 U.S.C. § 186.[3]

Section 186 provides that:

The charterer of any vessel, in case he shall man, victual, and navigate such vessel at his own expense, or by his own procurement, shall be deemed the owner of such vessel within the meaning of the provisions of this chapter relating to the limitation of the liability of the owners of vessels; and such vessel, when so chartered, shall be liable in the same manner as if navigated by the owner thereof.

There is no evidence in the pending case that Calkins or AOF manned, victualled or navigated the Lucky One at their expense or that they employed Ballo to do such for them.

It has been held that manning, victualling and navigating the vessel "are the kind of provisions which distinguish a time charter ... from a bareboat charter or demise in which complete control of the vessel is yielded to the charterer," and that "Congress intended ... to accord the right to limit liability to the bareboat charterer while denying the right to the time charterer." *In re Barracuda Tanker Corporation,* 281 F.Supp. 228, 231 (S.D.N.Y.1968). It has also been held that § 186 requires a charter contract. *The Severance,* 152 F.2d 916, 921 (4th Cir. 1945). There was no bareboat charter, express or otherwise, between Calkins and Ballo. Ballo, in fact, if deemed a charterer at all, more closely resembled a bareboat charterer since she had assumed the responsibility for manning, victualling and navigating the vessel.

Calkins' citation of *Austerberry v. United States,* 169 F.2d 583 (6th Cir. 1948) is not in point. There, the Coast Guard—the party seeking to limit liability—had continued at the time of the accident to have responsibility for the manning, provisioning, navigating and supplying of the vessel. *Id.,* at 585, 593.

Since Calkins has failed to show that he was an "owner" or "charterer" of the Lucky One at the time of the accident under any legal test, he is not entitled to limitation under 46 U.S.C. §§ 183 or 186. The decision of the district court is, therefore, affirmed.

**JUDGMENT AFFIRMED.**

---

**3.** Calkins' logic appears to be that the state court finding of liability on a theory of vicarious liability is tantamount to a finding that Calkins was a charterer of the vessel.